COURT OF APPEALS
**SECOND DISTRICT OF TEXAS**
**FORT WORTH**
**NO. 02-09-00280-CR**


GERARDO CONTRERAS
MORALES

APPELLANT

V.

THE STATE OF TEXAS

STATE

----------

FROM CRIMINAL DISTRICT COURT NO. 2 OF TARRANT COUNTY

----------

**MEMORANDUM OPINION**[1]

----------

## I. INTRODUCTION

A jury found Appellant Gerardo Contreras Morales guilty of one count of aggravated sexual assault of a child and assessed his punishment at ninety months' confinement. The trial court sentenced him accordingly. In three issues, Morales argues that the evidence was insufficient to support his conviction and

---

[1]*See* Tex. R. App. P. 47.4.

that the trial co`urt erred by failing to grant his motion for a mistrial after the State made inflammatory statements during its closing argument.  We will affirm.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Morales was hired to make repairs on a van owned by the Castillo family at their home on August 27, 2007.  The Castillo children were playing outside while their mother was inside cooking.  Mr. Castillo left the house to look for an auto part that Morales needed, and two of the children went inside with their mother, leaving eight-year-old Y.C. outside alone with Morales.  Mrs. Castillo testified at trial that Y.C. came into the house "after quite a while" and was "yellowish and trembling."  When asked what was wrong, Y.C. did not answer immediately but then responded that the man outside had touched her, put his hand through the leg of her shorts, and grabbed her "sandwich" (Y.C.'s term for the female sexual organ).  Mrs. Castillo instructed her other daughter to call the police and to stay inside with Y.C. while Mrs. Castillo went outside to confront Morales.  Mrs. Castillo testified that Morales first denied knowing what she was talking about, but prior to the police's arrival, he asked her to forgive him and to not call the police.  Mrs. Castillo threw Morales's keys and cell phone as far as she could in an effort to keep him there until the police arrived.

The police arrived quickly and placed Morales in a patrol car.  Mrs. Castillo took Y.C. to Cook Children's Hospital, where she was examined by Dr. Jayme Coffman, medical director for the CARE Team, the hospital's child abuse program.  Dr. Coffman conducted a child sexual assault exam and submitted

2

swabs of Y.C.'s genital area and Y.C.'s clothing to the Fort Worth Police Crime Lab for DNA testing. Y.C.'s clothes and the swabs tested negative for the presence of semen. Samples from the swabs and the clothing were submitted to another lab for more sophisticated testing. No male DNA was detected on the genital swabs, but a mixture of male DNA consistent with originating from at least two males was found on Y.C.'s underwear sample. Morales could not be excluded as a contributor to the mixture.

Morales was charged with three counts of aggravated sexual assault of a child. Counts one and two were submitted to the jury; count one alleged that Morales committed aggravated sexual assault of Y.C. by causing her sexual organ to contact his penis, and count two alleged that he committed aggravated sexual assault of Y.C. by inserting his finger into her female sexual organ. The jury found Morales not guilty of the first count but guilty of the second count.

### III. SUFFICIENCY OF THE EVIDENCE

In his first two issues, Morales argues that the evidence is insufficient to support his conviction for aggravated sexual assault of a child. *See* Tex. Penal Code Ann. § 22.021(a)(1)(B)(i), (a)(2)(B) (Vernon Supp. 2010). Morales's two issues complain of the legal and factual sufficiency of the evidence, but because the court of criminal appeals recently held that there is no meaningful distinction between the legal sufficiency standard and the factual sufficiency standard, we analyze Morales's evidentiary sufficiency arguments under only the legal sufficiency standard. *See Brooks v. State,* 323 S.W.3d 893, 912 (Tex. Crim.

3

App. 2010) (overruling *Clewis v. State*, 922 S.W.2d 126, 131–32 (Tex. Crim. App. 1996)). Specifically, Morales argues that the evidence is insufficient because of the lack of DNA evidence linking him to the offense, the presence of DNA of other male contributors, the lack of physical trauma to Y.C., and the existence of defensive evidence showing that it was physically impossible for him to have stood outside his van and penetrated Y.C.'s female sexual organ in accordance with her testimony at trial.

### A. Standard of Review

In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the prosecution to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Clayton*, 235 S.W.3d at 778. The trier of fact is the sole judge of the weight and credibility of the evidence. *See* Tex. Code Crim. Proc. Ann. art. 38.04 (Vernon 1979); *Brown v. State*, 270 S.W.3d 564, 568 (Tex. Crim. App. 2008), *cert. denied*, 129 S. Ct. 2075 (2009). Thus, when performing an evidentiary sufficiency review, we may not re-evaluate the weight and credibility of the

4

evidence and substitute our judgment for that of the factfinder. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). Instead, we "determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Hooper v. State*, 214 S.W.3d 9, 16–17 (Tex. Crim. App. 2007). We must presume that the factfinder resolved any conflicting inferences in favor of the prosecution and defer to that resolution. *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Clayton*, 235 S.W.3d at 778.

## B. Sufficient Evidence of Aggravated Sexual Assault of a Child

A person commits aggravated sexual assault of a child if he intentionally or knowingly causes the penetration, by any means, of the anus or sexual organ of a child younger than fourteen years. *See* Tex. Penal Code Ann. § 22.021(a)(1)(B)(i), (a)(2)(B). Morales was convicted of aggravated sexual assault by causing the penetration of Y.C.'s sexual organ with his finger.

At trial, Y.C. testified that one afternoon when she was eight years old, she was playing hide-and-seek with her sister when she hid inside her mother's van. Y.C. saw Morales standing in the open doorway of the van, and he told her to lie down on the backseat. When Y.C. complied, Morales began touching her "private part" with his hand. He pulled the leg of her shorts aside, put his hand up through the leg of her shorts, and put his finger inside her "private part." Y.C. testified that he "opened it and then he started touching [her] and then he went a little bit more and then he started touching the very middle." Morales then told

5

Y.C. to get up, and when she did, he unzipped his pants and "got his penis and put [it] inside [her] private part." When he "started to go up and down," Y.C. said she heard her mom calling her from inside and ran inside to her mom.

Y.C.'s testimony alone constitutes legally sufficient evidence to support Morales's conviction for aggravated sexual assault of a child by inserting his finger into her female sexual organ. *See, e.g.*, *Garcia v. State*, 563 S.W.2d 925, 928 (Tex. Crim. App. [Panel Op.] 1978) (noting that testimony of victim alone is sufficient evidence to support conviction for sexual assault); *West v. State*, 121 S.W.3d 95, 111 (Tex. App.—Fort Worth 2003, pet. ref'd) (same). Additionally, Mrs. Castillo corroborated her daughter's testimony. Mrs. Castillo testified that when she asked Y.C. what had happened, Y.C. responded, "The man, Mom, the man tried to do something bad to me." When asked what he did, Y.C. said, "He put his hand in my shorts. He grabbed my sandwich." Mrs. Castillo testified that "sandwich" is the term Y.C. uses to refer to the female sexual organ. Mrs. Castillo also testified that when she confronted Morales, he asked for her forgiveness.

Morales points to the lack of DNA evidence affirmatively linking him to the sexual assault, the presence of multiple male contributors of the DNA found on Y.C.'s underwear, and the lack of physical injury or trauma to Y.C. to support his argument. DNA testing on Y.C.'s underwear revealed the presence of at least two male contributors of DNA, and Morales could not be excluded as a contributor. Forensic scientist Elise Watts testified that DNA can be transferred

6

to an item of clothing merely by folding and stacking the laundry of several individuals together and that this could account for the presence of multiple contributors on Y.C.'s clothing. Watts further testified that it was not unusual in child sexual assault cases for DNA to not be left behind, especially when there is no report of ejaculation. Additionally, according to Dr. Coffman, the lack of evidence of trauma to Y.C. was consistent with Y.C.'s description of the assault, and it is not unusual in child sexual assault cases to see no evidence of physical trauma to the child because penetration is typically of the labia and not of the vagina. Dr. Coffman also testified that digital or even penile contact with the labia does not usually cause tears or cuts but may cause temporary redness that goes away quickly. The evidence is not rendered insufficient due to the lack of physical evidence affirmatively linking Morales to the assault and the lack of physical injury or trauma to Y.C.; physical evidence is not necessary to corroborate a sexual assault victim's testimony. *See Garcia*, 563 S.W.2d at 928.

Additionally, Morales points to defense evidence at trial that it was physically impossible for him to have penetrated Y.C.'s vagina with his penis while he was standing outside of the van in accordance with Y.C.'s testimony. Although the jury acquitted him of sexual assault by penetrating Y.C.'s sexual organ with his sexual organ, Morales argues that his acquittal on this count reflects on Y.C.'s lack of credibility and makes the evidence upon which he was convicted less convincing. However, we may not re-evaluate the weight and

7

credibility of the evidence and substitute our judgment for that of the factfinder. *See Williams*, 235 S.W.3d at 750.

Viewing the evidence in the light most favorable to the verdict, we hold that a rational trier of fact could have found beyond a reasonable doubt that Morales committed aggravated sexual assault of Y.C. by inserting his finger into her female sexual organ. Consequently, we hold that the evidence is sufficient to support Morales's conviction, and we overrule his first and second issues. *See Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Clayton*, 235 S.W.3d at 778.

## IV. DENIAL OF MISTRIAL

In his third issue, Morales argues that the trial court erred by not granting his motion for a mistrial for inflammatory argument by the State. Specifically, Morales complains of two statements made by the prosecutor—one that Y.C. had gone through two years of counseling and another that Y.C.'s family had "done everything right." Morales argues that the first statement was outside the record and that the second statement did not fall within one of the four primary purposes of jury argument. The trial court neither sustained nor overruled Morales's objection to the first statement, but the court instructed the jury to disregard it. The trial court sustained Morales's objection to the second statement and instructed the jury to disregard the prosecutor's statement. Morales's subsequent request for a mistrial was denied.

### A.  Standard of Review and Law on Permissible Areas of Jury Argument

To be permissible, the State's jury argument must fall within one of the following four general areas: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to argument of opposing counsel; or (4) plea for law enforcement.  *Felder v. State*, 848 S.W.2d 85, 94–95 (Tex. Crim. App. 1992), *cert. denied*, 510 U.S. 829 (1993); *Alejandro v. State*, 493 S.W.2d 230, 231 (Tex. Crim. App. 1973).  When a trial court sustains an objection and instructs the jury to disregard but denies a defendant's motion for a mistrial, the issue is whether the trial court abused its discretion by denying the mistrial.  *Hawkins v. State*, 135 S.W.3d 72, 76–77 (Tex. Crim. App. 2004).

### B.  Arguments Were Permissible

Morales argues that the State's comment that Y.C. had undergone two years of counseling since the time of the offense was improper because it was outside of the record.  But the State's comment merely referenced Mrs. Castillo's earlier testimony that Cook Children's Hospital referred her to a counselor, that she took Y.C. to counseling, and that Y.C. was still in counseling at the time of the trial, which was approximately two years after the date of the offense.  Thus, the statement was proper as a summation of the evidence.  *See Felder*, 848 S.W.2d at 94–95; *Alejandro*, 493 S.W.2d at 231.

Morales argues that the second complained-of statement—that the family had "done everything right"—was improper because it did not fall within the primary purposes of argument.  In the defense's closing argument, defense

counsel argued that the jury should find Morales not guilty because there was no physical evidence to corroborate Y.C.'s story and because the police did not find the type of evidence one would expect to find under the circumstances. During its rebuttal closing argument, the State argued that Y.C. did exactly what our society encourages children to do when someone does something bad to them— tell somebody. The State continued,

> And all this talk about no trauma. What did Dr. [Coffman] tell you? Only in five percent of documented sexual abuse cases are there physical findings. Five percent. That means that we're going to have to use our brains and examine the testimony of the child before we just get up and say, you know what, if you don't have trauma, if you didn't happen to get some DNA of his on you, he's going to walk.
>
> That's not the way it should work in this society. That's not what we want to happen when we bring our kids to the police department with our child saying they were abused. Is that what we want? Do we want [the] police to just come to you and say, you know what, if you don't have any DNA, there's nothing we can do for you.
>
> This family has been here since the beginning. And they have supported her and they have been with her every step of the way. They have done everything right.

Viewing the argument in context, we hold that the State's argument that the family had done everything right was a proper answer to defense counsel's argument. *See Felder*, 848 S.W.2d at 94–95; *Alejandro*, 493 S.W.2d at 231. Moreover, the State made the complained-of comment in the context of arguing that defendants should be held accountable even in the absence of DNA evidence affirmatively linking them to the offense. We hold that the argument

10

was also a proper plea for law enforcement.  *See Felder*, 848 S.W.2d at 94–95; *Alejandro*, 493 S.W.2d at 231.

Because both complained-of arguments were proper as a summation of the evidence, an answer to defense counsel's argument, or a plea for law enforcement, we hold that the trial court did not abuse its discretion by denying Morales's motion for a mistrial.  *See Hawkins*, 135 S.W.3d at 76–77.  We overrule Morales's third issue.

## V. Conclusion

Having overruled Morales's three issues, we affirm the trial court's judgment.

SUE WALKER
JUSTICE

PANEL:  LIVINGSTON, C.J.; DAUPHINOT and WALKER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  April 7, 2011